STATE of Maine

v.

Hope Ann ANDREI.

Supreme Judicial Court of Maine.

Argued March 6, 1990.
Decided April 20, 1990.

James E. Tierney, Atty. Gen., Wayne S. Moss (orally), Asst. Atty. Gen., Augusta, Craig Turner, Asst. Dist. Atty., Auburn, for plaintiff.

Allan Lobozzo (orally), New Gloucester, for defendant.

Before McKUSICK, C.J., and ROBERTS, WATHEN, CLIFFORD, HORNBY and COLLINS, JJ.

COLLINS, Justice.

Pursuant to 15 M.R.S.A. § 2115–A(1) (1980), the State appeals from the entry of a pretrial order of the Superior Court (Androscoggin County, *Bradford, J.*) suppressing the State's use of an incriminating passage in the diary of the defendant, Hope Ann Andrei, at the upcoming trial of the defendant for Class A Arson. The Superior Court concluded that admitting defendant's diary in evidence would violate her Fourth and Fifth Amendment rights against unreasonable searches and seizures and self-incrimination. We vacate the Superior Court's pretrial order suppressing the diary.

## I.

Early in the evening of April 17, 1989, members of the Auburn Fire Department responded to the scene of a fire in a six unit apartment building. The Office of the State Fire Marshal, the Auburn Police Department, and the Auburn Fire Department subsequently investigated the origin of the fire. The investigation determined that the fire originated in the living room area of apartment # 4, the residence of a married couple, Michael and Hope Ann Andrei. Fire Marshall Robert Long testified that the investigators found no evidence of accidental or natural causes for the fire, and determined that the fire had been deliberately set through the "introduction" of "a flammable liquid of some type . . . onto the floor area" of the Andreis' living room.

In the course of the investigation law enforcement officers entered and inspected the Andreis' apartment several times. The events giving rise to this appeal occurred on April 20, 1989, when Fire Marshall Robert Long, Deputy Chief Peter Simard of the Auburn Police Department, and State Fire Investigator Joseph Levasseur entered apartment # 4 with Michael Andrei present. The officers had previously obtained written consent to search the apartment from Michael Andrei and oral permission to enter from the owner of the building. They had not, however, spoken to Hope Ann Andrei about entering or searching the Andrei apartment.

While the officers were investigating the apartment on April 20, Michael Andrei called Fire Marshall Long into the corridor outside the apartment and showed Long his wife's diary, which Michael was holding in his hand. Michael directed Long's attention to the last few lines on a specific page in the journal. Although the diary was "water logged" and "somewhat faded," Long testified that as he stood there in the hallway he was able to read the entry indicated without the aid of a magnifying glass. Long stated that he read the passage for the first time in about the same amount of time that it took the hearing justice to read the entry into the record at the pretrial hearing. The passage states the following:

> I wish something would happen to me so that I don't half to go to the half way house. an accident, the house burning *down, anything but not using. anything but using.*

Officer Long and another officer took the diary to the Androscoggin Sheriff's Office, removed the spiral binding from the diary, and dried the pages one by one in a microwave oven to preserve them. Long testified that the legibility of the diary was not enhanced or otherwise altered by drying the pages.

On May 22, 1989, Hope Ann Andrei was indicted for Class A Arson, in violation of 17–A M.R.S.A. § 802 (1983 & Supp.1989). Following a pretrial hearing the Superior Court granted Hope Ann Andrei's motion to suppress her diary under both the Fourth and Fifth Amendments. The Superior Court concluded that "admitting defendant's diary into evidence will violate her Fourth and Fifth Amendment rights against unreasonable searches and seizures and self-incrimination." The court relied on *Boyd v. United States,* 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746 (1886), in which the United States Supreme Court held

> compulsory production of [a defendant's] private papers . . . is compelling him to be a witness against himself, within the meaning of the Fifth Amendment to the Constitution, and is the equivalent of a search and seizure—and an unreasonable search and seizure—within the meaning of the Fourth Amendment.

The State, arguing that neither constitutional provision justifies suppression of the diary, filed this appeal pursuant to 15 M.R.S.A. § 2115–A(1) (1980).

## II.

We direct our attention first to the issue whether the Superior Court erred by ruling that the State's seizure and reading of Hope Ann Andrei's diary violated her rights under the Fourth Amendment of the United States Constitution. The defendant does not contest the State's assertion that Michael Andrei's consent to the officers'

entrance and search of the Andrei apartment placed the officers' presence in the apartment within the "consent" exception to the rule that warrantless searches are per se illegal. See *State v. Libby*, 546 A.2d 444, 446 (Me.1988) (a third party possessing common authority over or other sufficient relationship to premises or effects sought to be inspected may consent to search); *State v. Boilard*, 488 A.2d 1380, 1384 (Me. 1985); *State v. Thibodeau*, 317 A.2d 172, 177 (Me.1974). Nevertheless, the defendant argues that the reading of the diary itself constitutes a separate search from that of the apartment—one to which, the defendant implicitly argues, Michael Andrei could not grant consent in his wife's absence. Additionally, the defendant argues that this separate search does not fall within the "plain view" exception to the rule that warrantless searches are per se illegal because the officers were required to read the diary carefully rather than simply to observe it.

We determine that Michael Andrei's presentation of the open diary to the police did not create a constitutional problem. First, we are persuaded that Michael was not acting as an "agent" of the law enforcement officers when he delivered the diary to their possession. In *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), the United States Supreme Court upheld the seizure of several weapons and articles of clothing that the accused's wife voluntarily delivered to police officers when the officers came to her house and asked whether the accused had any guns and what clothes he had worn on the night of the crime. The Court found that Mrs. Coolidge was not acting as an agent of the state. The Court explained, "[h]ad Mrs. Coolidge, wholly on her own initiative, sought out her husband's guns and clothing and then taken them to the police station to be used as evidence against him, there can be no doubt under existing law that the articles would later have been admissible in evidence." *Id.* at 487, 91 S.Ct. at 2048, 29 L.Ed.2d at 595 (citing *Burdeau v. McDowell*, 256 U.S. 465, 41 S.Ct. 574, 65 L.Ed. 1048 (1921)).

Similarly, in the case at hand, had Michael Andrei, wholly of his own initiative, brought his wife's diary to the Auburn Police Station, the diary would have been admissible—in the absence of an absolute constitutional bar to the seizure of diaries, as discussed below. The fact that Michael directed Long's attention to the journal in the hallway adjacent to the Andrei apartment as law enforcement officers searched the apartment should not undermine the conclusion that Michael acted of his own volition when he presented the journal. There is no indication in the record that Long or any of the other law enforcement officers "attempt[ed] ... to coerce or dominate [Michael], or for that matter, to direct [his] actions by the more subtle techniques of suggestion that are available to officials in circumstances like these." *Id.*, 403 U.S. at 489, 91 S.Ct. at 2050, 29 L.Ed.2d at 596.

Relying upon *Walter v. United States*, 447 U.S. 649, 100 S.Ct. 2395, 65 L.Ed.2d 410 (1980), the defendant next argues that Hope Ann Andrei's expectation of privacy in her diary must survive Michael's "third-party intervention." The *Walter* case concerned a third party's discovery of several hundred boxed, pornographic, 8–millimeter films. The films were mistakenly mailed to the third party in plain crates. Upon opening the crates, the third party found the films, which were individually packaged in boxes with descriptive labels, but which could not be viewed without the use of a projector. The Court held that although the third party had voluntarily delivered the films to FBI agents, the agents could not then screen the films with a projector without first obtaining a warrant. The Court stated that when an official search is properly authorized, whether by consent or by the issuance of a valid warrant, the scope of the search is limited by the terms of its authorization. *Id.* at 656, 100 S.Ct. at 2401, 65 L.Ed.2d at 417. Although the films were properly in the possession of the FBI agents, and although the agents could see that the film's labels indicated that the films contained pornography, the Court held that the agents' screening of the films constituted an invalid additional search be-

yond that previously made by the third party.

The facts of *Walter* make it distinguishable from the case at hand. In the case at hand, Officer Long's pause to read the indicated passage of Hope Ann Andrei's diary was not an additional search beyond the scope of that already conducted by the third party, Michael. Rather, Long's simple eye examination of the four lines of the diary revealed no more than what was exposed to plain view. Indeed, the Court in *Walter* acknowledged that "some circumstances—for example, if the results of the private search are in plain view when materials are turned over to the Government— may justify the Government's reexamination of the materials...." *Id.* at 657, 100 S.Ct. at 2402, 65 L.Ed.2d at 418.

We conclude that the State's seizure of Hope Ann Andrei's diary did not violate her rights under the Fourth Amendment to the United States Constitution.

### III.

█ Next, we address the issue whether the Superior Court erred by ruling that the introduction of Hope Ann Andrei's diary in evidence would violate her rights under the Fifth Amendment of the United States Constitution. The Superior Court cited *Boyd v. United States*, 116 U.S. 616, 634–35, 6 S.Ct. 524, 534–35, 29 L.Ed. 746 (1886), for the proposition that the *production of a defendant's private papers against her will is compelling that defendant to be a witness against herself* within the meaning of the Fifth Amendment. The State attacks this reading of *Boyd*, arguing the United States Supreme Court's decision in *Andresen v. Maryland*, 427 U.S. 463, 96 S.Ct. 2737, 49 L.Ed.2d 627 (1976), establishes that the Fifth Amendment only protects an individual from incrimination through the compul-

sion of his own testimony or of his personal records. It is worth noting that the essential principle of *Boyd*—that the compulsory production of a man's private papers to establish a criminal charge against him violates the Fifth Amendment—has been frequently reaffirmed by the United States Supreme Court.[1] Accordingly, the State's challenge here focuses on a reading of *Boyd* that would extend Fifth Amendment protection to a document obtained in the absence of some form of "compulsion." Given that Hope Ann Andrei's diary was voluntarily created and was delivered to the police in the absence of any form of compulsion, the State argues that the defendant's Fifth Amendment rights are not implicated.

We are persuaded by the State's argument that the Superior Court's reading of *Boyd* is too broad in light of more recent constitutional cases. In *Couch v. United States*, 409 U.S. 322, 93 S.Ct. 611, 34 L.Ed.2d 548 (1973), the United States Supreme Court recognized that the Fifth Amendment privilege is a personal privilege that adheres basically to the person rather than to information that may incriminate him. *Id.* at 328, 93 S.Ct. at 615, 34 L.Ed.2d at 554. The *Couch* case involved the constitutionality of a federal summons, issued by the IRS to an accountant, to produce the accounting records of a taxpayer who had submitted her business and personal tax records to the accountant. Finding "the ingredient of personal compulsion against [the] accused [to be] lacking," the Supreme Court determined that she could not invoke her Fifth Amendment privilege against compulsory self-incrimination to prevent the production of her business and tax records in the possession of her accountant. The Court stated, "[a]s Mr. Justice Holmes put it: 'A party is privileged from producing the evidence but

---

1. *See, e.g., Bellis v. United States*, 417 U.S. 85, 87, 94 S.Ct. 2179, 2182, 40 L.Ed.2d 678 (1974) (Fifth Amendment protects from self-incrimination through use of papers as well as through compelled oral testimony); *United States v. Calandra*, 414 U.S. 338, 346, 94 S.Ct. 613, 619, 38 L.Ed.2d 561 (1974) (grand jury may not compel production of books and papers that would incriminate accused); *Schmerber v. California*, 384 U.S. 757, 763–64, 86 S.Ct. 1826, 1831–32, 16 L.Ed.2d 908 (1966) (Fifth Amendment protects against "the compulsion of responses which are also communications, for example, compliance with a subpoena to produce one's papers"); *United States v. White*, 322 U.S. 694, 699, 64 S.Ct. 1248, 1251, 88 L.Ed. 1542 (1944) (protects from disclosure of documents to be used against accused as a witness).

not from its production.'" *Id.* (citing *Johnson v. United States,* 228 U.S. 457, 458, 33 S.Ct. 572, 572, 57 L.Ed. 919 (1913). "It is extortion of information from the accused himself that offends our sense of justice." *Id.*

Similarly, in *Andresen v. Maryland,* the United States Supreme Court found that no evidence of compulsion of the accused existed where the business records of the accused, which pertained to a fraudulent sale of land, (1) had been voluntarily created by the accused, (2) were seized by law enforcement personnel, and (3) were authenticated at trial by a handwriting expert rather than by the accused. Holding that the absence of any compulsory element removed the evidence from the protection of the Fifth Amendment, the Court stated:

> [A]lthough the Fifth Amendment may protect an individual from complying with a subpoena for the production of his personal records in his possession because the very act of production may constitute a compulsory authentication of incriminating information, ... a seizure of the same materials by law enforcement officers differs in a crucial respect—the individual against whom the search is directed is not required to aid in the discovery, production, or authentication of incriminating evidence.

*Id.,* 427 U.S. at 473–74, 96 S.Ct. 2737, 2745, 49 L.Ed.2d at 638.

Given that Hope Ann Andrei's diary could be introduced at trial without any form of compulsion of the defendant, the Fifth Amendment need not be implicated.

### IV.

Finally, we reject Hope Ann Andrei's argument, for which she has failed to cite any controlling authority, that her privacy interests in her own diary are so precious that the Fourth and Fifth Amendments, operating together, protect her journal absolutely from any seizure by law enforcement agents without regard to the circumstances of the seizure. Even though both the Fourth and Fifth Amendment engender our interest in the protection of the individual's personal privacy in the face of governmental intrusion, neither the individual's right to be free from unreasonable searches and seizures under the Fourth Amendment nor the individual's privilege not to be compelled to provide testimony against herself under the Fifth Amendment creates a right to privacy for personal papers that is absolute.

The entry is:

Suppression order vacated.

All concurring.