BENTON, Judge,
with whom COLEMAN, J., joins, dissenting.
Because I conclude that Boyd v. United States, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746 (1886), bars the seizure and use of Moyer’s diaries, I would hold that the trial judge’s ruling permitting the use of those diaries against Moyer at trial violated Moyer’s rights under the Fifth Amendment. Therefore, I respectfully dissent.
In relevant part, the Fifth Amendment provides that “[n]o person ... shall be compelled in any criminal case to be a witness against himself.” In Boyd, the United States Supreme Court held unconstitutional, under the Fourth and Fifth Amendments, a subpoena duces tecum ordering Boyd to produce an invoice which established his guilt for nonpayment of a duty tax. The Court explained that it was “unable to perceive that the seizure of a man’s private books and papers to be used in evidence against him is substantially different from compelling him to be a witness against himself.” Id. at 633, 6 S.Ct. at 534. Thus, the Court held “that a compulsory production of the private books and papers of the [accused] ... is compelling him to be a witness against himself, within the meaning of the Fifth Amendment to the Constitution, and is the equivalent of a search and seizure — and an unreasonable search and seizure — within the meaning of the Fourth Amendment.” Id. at 634-35, 6 S.Ct. at 534-35. Not even a warrant supported by probable cause could mask the “ ‘unreasonable’ character of such seizures” and legitimize the use of those seized' documents at trial. Id. at 633, 6 S.Ct. at 534.
Following this landmark decision, the Court has refined the scope of Boyd’s Fifth Amendment holding. In Couch v. *38 United States, 409 U.S. 322, 324, 93 S.Ct. 611, 614, 34 L.Ed.2d 548 (1973), the Court decided the “question ... whether the taxpayer may invoke her Fifth Amendment privilege against compulsory self-incrimination to prevent the production of her business and tax records in the possession of her accountant.” The Court held that when an individual surrenders his or her business records to the possession of a third party, and the government subpoenas the third party to produce the records, the individual has no expectation of privacy in the records and the Fifth Amendment does not bar their production. See id. at 329-30, 93 S.Ct. at 616-17. Significantly, the Court noted that Boyd concerned an accused who possessed his own private papers and “did not ... address or contemplate the divergence of ownership and possession.” Id. at 330, 93 S.Ct. at 616.
Later, in Fisher v. United States, 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976), the Court “h[eld] that compliance with a summons directing [a] taxpayer to produce the [taxpayer’s] accountant’s documents ... involve[d] no incriminating testimony within the protection of the Fifth Amendment.” Id. at 414, 96 S.Ct. at 1582. The Court clearly recognized the continuing validity of Boyd when it stated, “[w]hether the Fifth Amendment would shield the taxpayer from producing his own tax records in his possession is a question not involved here; for the papers demanded here are not his ‘private papers,’ see Boyd v. United States, 116 U.S. at 634-35 [6 S.Ct. at 534-35].” Fisher, 425 U.S. at 414, 96 S.Ct. at 1582; see also Shapiro v. United States, 335 U.S. 1, 16-18, 68 S.Ct. 1375, 1383-84, 92 L.Ed. 1787 (1948) (holding that records that are required by statute to be kept cannot be sheltered by the invocation of the Fifth Amendment).
As in Couch, the taxpayer in Fisher did not possess the documents — a third party, the taxpayer’s attorney, did. Thus, the Court’s “holding is that compelled production of documents from an attorney does not implicate whatever Fifth Amendment privilege the taxpayer might have enjoyed from being compelled to produce them himself.” Fisher, 425 U.S. at 402, 96 S.Ct. at 1576. Furthermore, the documents that *39 were subpoenaed in Fisher were documents prepared by the taxpayer’s accountant, not the taxpayer. Accordingly, the Court said, “[w]e do hold that compliance with a summons directing the taxpayer to produce the accountant’s documents involved in these cases would involve no incriminating testimony within the protection of the Fifth Amendment.” 425 U.S. at 414, 96 S.Ct. at 1582 (emphasis added). Stating that “[p]urely evidentiary (but ‘non testimonial’) materials, as well as contraband and fruits and instrumentalities of crime, may now be searched for and seized under proper circumstances,” Fisher, 425 U.S. at 407, 96 S.Ct. at 1579, the Court nonetheless noted, however, that the question is open under the Fifth Amendment “ ‘whether there are items of evidential value whose very nature precludes them from being the object of a reasonable search and seizure.’ ” Id. at 407 n. 9, 96 S.Ct. at 1579 n. 9.
After its decision in Fisher, the Court held “that the search of an individual’s office for business records, their seizure, and subsequent introduction into evidence do[es] not offend the Fifth Amendment’s proscription.” Andresen v. Maryland, 427 U.S. 463, 477, 96 S.Ct. 2737, 2747, 49 L.Ed.2d 627 (1976). In so holding, the Court specifically noted “that permitting the introduction into evidence of a person’s business records seized during an otherwise lawful search would [not] offend or undermine any of the policies undergirding the privilege.” Id. at 475-76, 96 S.Ct. at 2746. Significantly, however, the Court “recognize[d], of course, that the Fifth Amendment protects privacy to some extent.” Id. at 477, 96 S.Ct. at 2747. Indeed, the Court noted that the Fifth Amendment promotes the following societal values:
“The privilege against self-incrimination ... reflects many of our fundamental values and most noble aspirations: our unwillingness to subject those suspected of crime to the cruel trilemma of self-accusation, perjury or contempt; our preference for an accusatorial rather than an inquisitorial system of criminal justice; our fear that self-incriminating statements will be elicited by inhumane treatment and abuses; our sense of fair play which dictates ‘a fair state- *40 individual balance by requiring the government to leave the individual alone until good cause is shown for disturbing him and by requiring the government in its contest with the individual to shoulder the entire load’ ...; our respect for the inviolability of the human personality and of the right of each individual ‘to a private enclave where he may lead a private life’ ...; our distrust of self-deprecatory statements; and our realization that the privilege, while sometimes ‘a shelter to the guilty,’ is often ‘a protection to the innocent.’ ”
Id. at 476 n. 8, 96 S.Ct. at 2746 n. 8 (emphasis added). The Court again distinguished Boyd by noting that Boyd concerned “private papers” and did not “compel suppression of [the accused’s] business records.” Id. at 471-72, 96 S.Ct. at 2744. Thus, Andresen implicitly leaves open the question Fisher explicitly left open. See 425 U.S. at 407 n. 9, 96 S.Ct. at 1579 n. 9.
Still later, United States v. Doe, 465 U.S. 605, 606, 104 S.Ct. 1237, 79 L.Ed.2d 552 (1984), “presented] the issue whether, and to what extent, the Fifth Amendment privilege against compelled self-incrimination applies to the business records of a sole proprietorship.” The Court ruled that the contents of business records are not privileged under the Fifth Amendment where the accused voluntarily prepared the documents. See id. at 610-11, 104 S.Ct. at 1240-42. Answering the question not posed in Fisher, the Court held that the content of business records, even in the possession of the accused, are not privileged. See id. at 611-12, 104 S.Ct. at 1241-42. Although Doe clearly involved business records, Justice O’Connor in a concurring opinion interpreted the Court’s opinion in Doe to mean that “the Fifth Amendment provides absolutely no protection for the contents of private papers of any kind.” 465 U.S. at 618, 104 S.Ct. at 1245 (O’Connor, J., concurring). Justice Marshall, however, joined by Justice Brennan, adamantly disagreed and reasserted the principle “that under the Fifth Amendment ‘there are certain documents no person ought to be compelled to produce at the Government’s request.’ ” 465 U.S. at 619, 104 S.Ct. at 1246 *41 (Marshall, J., concurring and dissenting) (citation omitted). In short, although these cases refine the holding in Boyd, the Supreme Court has never overruled the core holding of Boyd.
Although the Commonwealth is correct in asserting that the Supreme Court has altered its Fifth Amendment analysis, my analysis of these cases clearly establishes that the Court has only done so with respect to business papers. The Court’s basic holding in Boyd, as applied to private papers that are testimonial or communicative and that are in the possession of the accused, has never been reversed. As the Court held in Boyd, “any forcible and compulsory extortion of a man’s own testimony or of his private papers to be used as evidence to convict him of a crime or to forfeit his goods, is within the condemnation of ... the Fourth and Fifth Amendments.” 116 U.S. at 630, 6 S.Ct. at 532. Indeed, the Court has noted in dicta on several occasions the unique privacy interest a person has in his or her personal papers when those papers remain in the person’s possession. See, e.g., United States v. Dionisio, 410 U.S. 1, 11-12, 93 S.Ct. 764, 770-71, 35 L.Ed.2d 67 (1973) (citing Boyd for the proposition that a grand jury “cannot require the production by a person of [incriminating] private books and records” and stating that on the facts before it, “no valid Fifth Amendment claim ... [existed because there] was no order to produce private books and papers”); Nixon v. Administrator of General Services, 433 U.S. 425, 455, 459-60, 97 S.Ct. 2777, 2796, 2798-99, 53 L.Ed.2d 867 (1977) (indicating that had more of the documents the former President sought to protect from disclosure under the Presidential Recordings and Materials Preservation Act been private communications or personal diary dictabelts, then his First, Fourth, and Fifth Amendments claims would have had greater merit). Other courts have agreed. See, e.g., United States v. (Under Seal), 745 F.2d 834, 840 (4th Cir.1984), vacated as moot, 471 U.S. 1001, 105 S.Ct. 1861, 85 L.Ed.2d 155 (1985) (holding “in line with Boyd, that the fifth amendment prevents the government from subpoenaing an individual’s incriminating papers that are in his possession and are held by him in an individual ... capacity”); In Re Grand Jury Proceedings, 632 F.2d 1033, *42 1042 (3rd Cir.1980) (holding that an accused’s Fifth Amendment rights are violated if he is required to produce his personal “pocket diaries”); United States v. Boyette, 299 F.2d 92, 95 (4th Cir.1962) (stating in dicta that “it has been thought that a diary in which its author has recited his criminal conduct, seized in an otherwise lawful search, should not be used against him, just as any other kind of involuntary confession is unusable under the Fifth Amendment”); United States v. Katin, 109 F.R.D. 406, 409 (D.Mass.1986) (noting that “[ijntimate personal papers such as private diaries, or drafts of letters or essays, are not business records whose contents are unprotected by the Fifth Amendment”).
In addition to Andresen, a case involving “business records,” 427 U.S. at 477, 96 S.Ct. at 2746, the Commonwealth cites United States v. Levasseur, 699 F.Supp. 965 (D.Mass. 1988). However, Levasseur relies upon Andresen, see 699 F.Supp. at 989. In United States v. LeVasseur, 619 F.Supp. 775 (E.D.N.Y.1985), another case cited by the Commonwealth, the trial judge refused a motion to suppress on Fourth Amendment grounds “coded notebooks” seized from the accused. Id. at 791. The sparsity of the description of the items leaves in question the precise issue raised and decided.
The Commonwealth also cites State v. Andrei 574 A.2d 295 (Me.1990). There, the Supreme Judicial Court of Maine held that where the accused’s husband delivered- the accused’s diary to government officials, no Fifth Amendment violation occurred. Thus, the court rested its decision on the fact that due to circumstances of the possession and delivery of the diary by a third party, the accused’s “diary could be introduced at trial without any form of compulsion of the [accused].” Id. The decision in Andrei also relies on Andresen, which we have previously stated pertained solely to business records. See 574 A.2d at 299. Likewise, in People v. Willey, 103 Mich.App. 405, 303 N.W.2d 217 (1981), the diaries were given to the police by a third party. See id.
The Commonwealth further argues that Moyer’s diaries are not protected by the Fifth Amendment privilege against self- *43 incrimination because Moyer was not compelled to produce them. The distinction between being compelled to produce personal documents by subpoena, however, and having those same personal documents seized by the government, does not relieve the government of its obligation to avoid violating the Fifth Amendment rights of an accused. See Hill v. Philpott, 445 F.2d 144, 149-50 (7th Cir.1971) (holding that where production of the taxpayer’s personal books and records would have properly been refused on the basis of Fifth Amendment privilege against self-incrimination if they had been sought by subpoena or summons, the fact that they were seized pursuant to valid search warrant did not preclude the taxpayer from claiming violation of his Fifth Amendment rights). As stated by the United States Supreme Court in Gouled v. United States, 255 U.S. 298, 41 S.Ct. 261, 65 L.Ed. 647 (1921):
In practice the result is the same to one accused of crime, whether he be obliged to supply evidence against himself or whether such evidence be obtained by an illegal search of his premises and seizure of his private papers. In either case he is the unwilling source of the evidence, and the Fifth Amendment forbids that he shall be compelled to be a witness against himself in a criminal case.
Id. at 306, 41 S.Ct. at 264. This principle has been reiterated in subsequent cases. See Agnello v. United States, 269 U.S. 20, 46 S.Ct. 4, 70 L.Ed. 145 (1925), and United States v. Lefkowitz, 285 U.S. 452, 52 S.Ct. 420, 76 L.Ed. 877 (1932), and is implicit in the Court’s rationale in both Warden v. Hayden, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967), and Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966).
As the Third Circuit has noted, “[t]he fifth amendment doctrine protecting an accused from producing incriminating private papers manifests its vitality by virtue of the Fisher court’s explicit efforts to distinguish its facts from the facts in Boyd.” In Re Grand Jury Proceedings, 632 F.2d at 1043 (citing Fisher, 425 U.S. at 414, 96 S.Ct. at 1582). Clearly, Andresen, which concerned the police search of an individual’s office and seizure of business records is not controlling when *44 the issue pertains to private diaries of a testimonial and communicative nature. Indeed, the Supreme Court recently-emphasized the important constitutional distinction between “testimonial” and other communications:
The term “privilege against self-incrimination” is not an entirely accurate description of a person’s constitutional protection against being “compelled in any criminal case to be a witness against himself.”
The word “witness” in the constitutional text limits the relevant category of compelled incriminating communications to those that are “testimonial” in character. As Justice Holmes observed, there is a significant difference between the use of compulsion to extort communications from a defendant and compelling a person to engage in conduct that may be incriminating. Thus, even though the act may provide incriminating evidence, a criminal suspect may be compelled to put on a shirt, to provide a blood sample or handwriting exemplar, or to make a recording of his voice. The act of exhibiting such physical characteristics is not the same as a sworn communication by a -witness that relates either express or implied assertions of fact or belief. Pennsylvania v. Muniz, 496 U.S. 582, 594-598 [110 S.Ct. 2638, 2646-49, 110 L.Ed.2d 528] (1990). Similarly, the fact that incriminating evidence may be the byproduct of obedience to a regulatory requirement, such as filing an income tax return, maintaining required records, or reporting an accident, does not clothe such required conduct with the testimonial privilege.
United States v. Hubbell, — U.S.-,-, 120 S.Ct. 2037, 2042, — L.Ed.2d - (2000). The aspect of the Boyd decision providing protection for diaries of a testimonial nature stands undisturbed.
For these reasons, I would hold that the trial judge’s ruling that permitted the use of those diaries against Moyer at trial violated Moyer’s rights under the Fifth Amendment.
I also disagree with the majority’s interpretation of Code § 18.2-370.1. During trial, the trial judge ruled that “buttocks” are “sexual ... parts” within the meaning of Code *45 § 18.2-370.1. Moyer contends that ruling was error and that, because the evidence supporting five of the indictments proved only that “bare buttocks” were exposed, we should reverse those convictions on the ground that the evidence was insufficient. Moyer further contends that “evidence throughout the trial of paddling on buttocks and exposure of buttocks ... flavored and colored the evidence regarding the other indictments,” prejudicially affecting all the other convictions.
Code § 18.2-370.1 provides as follows:
Any person eighteen years of age or older who maintains a custodial or supervisory relationship over a child under the age of eighteen, including but not limited to the parent, step-parent, grandparent, step-grandparent, or who stands in loco parentis with respect to such child and is not legally married to such child, and who, with lascivious intent, knowingly and intentionally (i) proposes that any such child feel or fondle the sexual or genital parts of such person or that such person feel or handle the sexual or genital parts of the child, or (ii) proposes to such child the performance of an act of sexual intercourse or any act constituting an offense under § 18.2-361, or (in) expose his or her sexual or genital parts to such child, or (iv) proposes that any such child expose his or her sexual or genital parts to such person, or (v) proposes to the child that the child engage in sexual intercourse, sodomy or fondling of sexual or genital parts with another person, or (vi) sexually abuses the child as defined in § 18.2-67.10(6), shall be guilty of a Class 6 felony.
(Emphasis added).
The trial judge concluded, and the majority now affirms, that our decision in Hart v. Commonwealth, 18 Va.App. 77, 441 S.E.2d 706 (1994), necessarily leads to the conclusion that “buttocks” are “sexual ... parts” under the statute. In Hart, the accused was charged and convicted of indecent exposure under Code § 18.2-387, which makes it a misdemeanor to “obscene[ly] display or expos[e]” ones “person, or the private parts thereof, in any public place.” See Hart, 18 Va.App. at 78, 441 S.E.2d at 706. Ruling that the meaning of the word *46 “private parts” was ambiguous, and consistent with well recited rules of statutory construction, we looked to other sections of our Code for guidance. See id. at 79, 441 S.E.2d at 707. This analysis supported the holding in Hart that the legislature intended “buttocks” to be “private parts” within the meaning of Code § 18.2-387. Id.
We face no such ambiguity here. Except for subsection (ii) and (vi), which are inapplicable in this case, Code § 18.2-370.1 clearly addresses conduct in which “sexual or genital parts” were either fondled, exposed, or proposed to be fondled or exposed. Unlike the term “private parts,” which could have a number of meanings depending on the source of inquiry, I perceive no ambiguity in the meaning of “sexual or genital parts.” “Sexual” is defined as “of or relating to the male or female sexes or their distinctive organs or functions.” Webster’s Third New International Dictionary 2082 (1981). “Sexual organ,” a term relevant to any inquiry of the meaning of “sexual part,” is defined as “an organ of the reproductive system; an external generative organ.” Id. “Genital” is defined as “generative” and “relating to or being a sexual organ.” Id. at 946. The definitions are clear, precise, and unambiguous.
“Where a statute is unambiguous, the plain meaning is to be accepted without resort to the rules of statutory interpretation.” “ ‘Courts are not permitted to rewrite statutes. This is a legislative function. The manifest intention of the legislature, clearly disclosed by its language, must be applied.’ ” Accordingly, we must “ ‘take the words as written’ ” in Code § 18.2-370.1 and give them their plain meaning.
Krampen v. Commonwealth, 29 Va.App. 163, 167, 510 S.E.2d 276, 278 (1999).
Nothing in the definition of “sexual” or “sexual organ” supports the majority’s conclusion that buttocks are “sexual ... parts” within the meaning of Code § 18.2-370.1. Buttocks are neither “an organ of the reproductive system,” nor are they “an external generative organ.” Furthermore, buttocks do not “relat[e] to the male or female sexes or their distinctive *47 organs or functions.” While a buttock may be a “private part,” such that the legislature made it illegal to expose the buttocks under Code § 18.2-387, see Hart, I do not agree that buttocks are “sexual parts” under Code § 18.2-370.1.
I would hold, therefore, that the trial judge’s finding tainted his ruling on the evidence. I cannot say, however, that upon a proper consideration of the evidence, the convictions necessarily would be unsupported by sufficient evidence. The evidence properly presented might establish that one who exposes his or her buttocks exposed his or her genitalia as well. See State v. Fly, 348 N.C. 556, 501 S.E.2d 656, 659 (1998) (holding that where the accused, wearing only a baseball hat and pants around his ankles, bent over so that his bare buttocks faced the complaining witness, a “jury could reasonably find ... that [the accused] had exposed ... either his anus, his genitals, or both”). Because the trial judge ruled incorrectly, however, concerning the law, he made no findings on this point on each of the instances involving exposed buttocks. Thus, I cannot conclude that if properly viewed, the evidence would have excluded this possibility.
For these reasons, I would reverse the convictions and remand for a new trial without permitting the use of the diaries at that trial.