[Crim. No. 5525.   Second Dist., Div. Three.   Jan. 30, 1956.]

THE PEOPLE, Respondent, v. ROBLEY DILMAR EVANS, Appellant.

Sam Bubrick for Appellant.

Edmund G. Brown, Attorney General, and Norman H. Sokolow, Deputy Attorney General, for Respondent.

SHINN, P. J.—By information appellant was charged with and in a trial to the court was convicted of indecent exposure in violation of section 311, subdivision 1 of the Penal Code, it being alleged and upon the trial admitted by the defendant that he had previously suffered a conviction of the same section of the Penal Code. Appellant made a motion for a new trial which was denied. Probation was granted and an appeal was taken from the judgment and order denying a new trial. The case was tried upon the evidence received before the committing magistrate and further evidence adduced at the trial.

The first point on the appeal is "that the verdict was contrary to the evidence." It is argued with a measure of plausibility that the testimony of the complaining witness to whom we will refer as "Suzanne" was contradictory and lacking in consistency. She was 14 years of age; she testified at the preliminary and also at the trial; her testimony was given glibly and, we must say, with a measure of exaggeration. She testified that on six occasions she saw defendant's car parked at a curb as she passed by and that ". . . he always used to make obscene faces. . . . I *always* used to come down Santa Barbara and turn down Bronson before, and he *always* used to be seated there . . . that *always* happened when I was getting home from the store . . . he has followed me to the shows on Saturday afternoons. . . . Every time I saw him, I always ran home because I was scared. . . . I just knew exactly what he was thinking . . . he was pointing and I guess he wanted me to come in with him—— . . . after the first time I was sort of getting used to him, because I saw him around the street. . . . I was getting very familiar with seeing him *every* time I used to walk any place, I would see him. He would follow me to the show even."

▮ It was charged that the offense was committed August 21, 1954. The witness testified that she had been followed by the defendant in previous months and also in January or February of the following year. Some two weeks after the alleged occurrence in September she reported the matter to the police. Describing the occurrence which led to the accusation Suzanne testified that she saw defendant sitting in the driver's seat of his car while it was parked at the curb; she was about 15 feet away; she looked in the window and he was pointing to her to come in; two ladies were ahead of her and· they started laughing and "I was scared; I turned my head away and then I saw those ladies laughing

and I looked in, I was just curious." It was then, she testified, she saw defendant exposing himself. Although on her direct examination she placed him seated behind the steering wheel leaning against the door, before her cross-examination was concluded she had him placed in a sitting position "on a book or something," almost on the arm rest of the car and facing in her direction. Her testimony that she could see into the car and see the defendant in the described position was not incredible. While she displayed a lively imagination with respect to defendant's supposed fascination for her it is scarcely conceivable that her accusations with respect to his conduct on the specific occasion in question were unfounded. There was testimony that when defendant was questioned by officers in the police station he stated that he occasionally blacked out and that he was probably guilty of the acts charged. Further discussion of the evidence is unnecessary. It was not legally insufficient to justify the verdict.

The second point urged by the defendant is a charge of misconduct of the prosecutor in questioning defendant's expert witness. For a considerable time defendant had been under psychiatric treatment in a veterans' clinic. His physician testified in his behalf to the effect that he was normal and not subject to any sex deviation; that he had no sexual affinity for young girls; his tendencies were toward older women. On cross-examination the doctor was asked "Now, Doctor, if you were informed that this defendant had in fact exposed the private parts of his body to girls on four different occasions during one summer—" Defendant registered an objection. The prosecutor stated that his witness was in the east and not available to testify to the facts but that he was acting in good faith. The court ruled the question was proper; that the assumed facts need not be proved if the question was asked in good faith and was based on information received by the district attorney. The witness naturally answered that a person who exposed himself on six different occasions would have a propensity for exposing himself.

The questioning was improper and the ruling was erroneous. The question was not based upon any evidence of the assumed facts. The good faith of the prosecutor furnished no justification for the indirect accusation of the commission of other offenses. If good faith were an excuse for the asking of such damning questions ignorance of the rules of evidence and fair play would be put at a premium. But we

are persuaded that the incident did not substantially prejudice the case of the defendant. ■ The facts as to defendant's former offense were in evidence through the testimony of the physician and that incident was one of the occasions for the treatment defendant was receiving. The facts suggested by the prosecutor's question, necessarily based upon hearsay, added little to the fact that defendant had previously been convicted of a similar offense. We do not believe the judgment of the court was influenced to any degree by the prosecutor's question.

The judgment and order denying a new trial are affirmed.

Wood (Parker), J., and Vallée, J., concurred.