[No. D035591. Fourth Dist., Div. One. Apr. 17, 2002.]

THE PEOPLE, Plaintiff and Respondent, v.
DAVID MASSICOT, Defendant and Appellant.

**COUNSEL**

Suzanne F. Evans, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General,

Janelle M. Boustany and Randall D. Einhorn, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

O'ROURKE, J.—A jury convicted David Massicot of two counts of indecent exposure with prior convictions for the same offense. (Pen. Code, § 314, subd. 1.)[1] Before trial, Massicot pleaded guilty to failure to register as a sex offender under section 290, subdivision (g)(1). The court suspended imposition of sentence and placed him on formal probation for five years. Massicot contends the court violated his constitutional rights to due process and a fair trial by misinterpreting the law so as to allow the jury to convict him of indecent exposure when he neither exposed his genitals to the public nor desired to direct attention to them, and prejudicially erred when it instructed the jury with an incorrectly modified version of CALJIC No. 16.220. Massicot further contends his conviction for indecent exposure is not supported by substantial evidence.

Under what we hold is the proper interpretation of the phrase "[e]xposes his person" in section 314, subdivision 1, we agree Massicot's conviction is not supported by substantial evidence because Massicot did not display his naked genitals. We also, necessarily, conclude the specific intent to expose one's genitals in this manner is an essential element of the indecent exposure offense. Accordingly, we reverse the judgment (order granting probation) as to Massicot's convictions of violation of section 314, subdivision 1. (§ 1237; *People v. Stout* (1967) 66 Cal.2d 184, 188, fn. 1 [57 Cal.Rptr. 152, 424 P.2d 704].)

### FACTUAL AND PROCEDURAL BACKGROUND

In March 1999, Maria O. worked as a night clerk at an inn in Chula Vista. One morning that month about 2:30 a.m., a man whom Maria O. later identified as Massicot appeared before the night customer window wearing a robe. He pulled up the robe and showed her he was wearing only women's flesh-colored lace underpants and lace bra. Massicot turned around and showed her his buttocks, which were revealed by the underpants he was wearing. Although she did not look at him for very long, Maria O. was able to see portions of Massicot's body from his thighs up, specifically his bare thighs, stomach, chest and shoulders. The underpants covered his genital area and she could not see his penis through them, although she could see a "bulge." According to Maria O., Massicot looked to be showing off the

---

[1] All statutory references are to the Penal Code unless otherwise indicated.

undergarments he was wearing. She was fearful after the incident and did not want to work by herself at the hotel.

Two weeks later, about the same time in the morning, Massicot appeared again before Maria O. wearing an unbuttoned shirt. He showed her he was wearing the same lace bra and underpants as before. She saw the same parts of his skin as during the prior incident. Fearing something might happen to her if Massicot appeared again, she asked her husband to accompany her to work at night.

On April 3, 1999, about 2:30 a.m., Massicot returned to the inn and tapped the night window to get Maria O.'s attention, wearing the same robe, lace bra and underpants. The robe was open. She called to her husband, who was sleeping in the lobby, and Massicot fled. Maria O.'s husband obtained Massicot's license plate number and they called the police. According to a police officer arriving at the scene, Maria O. was sobbing and upset, and told him Massicot danced or gyrated before her outside the window. Police later told her they warned Massicot not to come to the inn again and she should call them if he returned.

On November 16, 1999, Massicot returned to the inn wearing a T-shirt and normal clothing. Maria O. called the police as she had been instructed. Police arriving at the inn found her crying and frantic. A police officer contacted Massicot at his house and upon a voluntary search, found a lace bra and underpants in a brown paper bag. The officer testified the underpants were a little smaller than a man's "Speedo" bathing suit, but agreed the undergarments were large and would cover a large part of a person's body, more than many women would wear at the beach.

Massicot told police after his arrest that he had been at the hotel and "acted kinky" to elicit a reaction from Maria O.; he liked Asian; particularly Filipino, women. He fantasized about her and masturbated when he returned home.

Before trial, Massicot admitted that on October 28, 1997, he was convicted for violating section 314, subdivision 1, in former Los Angeles County Municipal Court. Massicot further conceded the sexual intent element would not be in issue at trial; he agreed his conduct toward Maria O. was for purposes of his sexual arousal.

At trial, the court permitted the prosecutor to argue to the jury that a violation of section 314, subdivision 1, did not require total nudity; that

partial nudity without genital exposure would meet the exposure element of the statute.[2]

## DISCUSSION

Massicot contends the court erroneously interpreted section 314, subdivision 1, to encompass willful and lewd conduct that does not involve exposure of the genitals, thus depriving him of his constitutional rights to a fair trial and due process. Massicot further contends his convictions for indecent exposure are not supported by substantial evidence because he was not nude and the evidence does not suggest he intended to direct public attention to his genitals. Finally, Massicot contends the court erroneously instructed the jury on the elements of section 314 with a modified version of CALJIC No. 16.220. ■ The premise underlying all of these claims is that the crime of indecent exposure requires exposure of the genitals as a necessary element of the offense. Because we hold the only reasonable construction of the phrase "[e]xposes his person" within section 314 is that it means the display of a person's entirely unclothed body, including by necessity the bare genitals, we conclude that premise is correct and Massicot's convictions under section 314, subdivision 1 must be reversed.

Section 314 provides in part: "Every person who willfully and lewdly . . . : [¶] 1. Exposes his person, or the private parts thereof, in any public place, or in any place where there are present other persons to be offended or annoyed thereby . . . [¶] . . . is guilty of a misdemeanor. [¶] . . . [¶] Upon the second and each subsequent conviction under subdivision 1 of this section . . . , every person so convicted is guilty of a felony, and is punishable by imprisonment in state prison." The People contend that under the disjunctive language of the statute (exposes his person, *or* the private parts thereof), a defendant need not actually expose his or her private parts

---

[2]The prosecutor argued: "The second part of element 1 is whether or not he [Massicot] exposed his person. Now, remember it is person or genitals, and that may surprise some of you because typically indecent exposure people [*sic*] think exposure requires nudity. Perhaps that is what you're thinking, but, you know what, the law doesn't require that, and it doesn't require that because of this particular type of situation." She explained it was sufficient that Maria O. saw Massicot's bare shoulders, stomach and thighs. The prosecutor said, "You can't Mickey Mouse around the law and say that I was wearing a G string that day and, therefore, it is not indecent exposure. [¶] That is not the law in California because it only requires exposure of your person, and let's face it. Maria . . . . saw a lot of Mr. Massicot's person, more than she wanted to see. In fact, she didn't even want to look up, but she did look because he was in front of her and she saw his shoulders, the bra, his stomach, the underwear, the upper part of his thighs. That is a lot of person. [¶] It is not his exposed genitals, and I told you from the beginning you weren't going to hear testimony about someone saw his genitals . . . ."

to commit the offense. Further, the People assert Massicot acted lewdly within the meaning of section 314, subdivision 1, despite the fact his genitals were opaquely covered by an undergarment; and that by opening his robe and displaying the underpants and his "bulge," Massicot called attention to his genitals as required by the "lewdness" prong of the statute. (See *In re Smith* (1972) 7 Cal.3d 362, 366 [102 Cal.Rptr. 335, 497 P.2d 807].)

There is no issue here whether Massicot exposed his genitals under section 314, subdivision 1. The People, interpreting the term "private parts" as synonymous with genitals,[3] concede he did not. The question is whether, by displaying his bare shoulders, thighs and buttocks to Maria O., Massicot exposed his "person" within the meaning of the statute. This is a matter of statutory interpretation. Thus, we begin with the statute itself. ▪ Where the statutory language in dispute is clear and unambiguous, there is no need for construction and the judiciary should not indulge in it. (*California Fed. Savings & Loan Assn. v. City of Los Angeles* (1995) 11 Cal.4th 342, 349 [45 Cal.Rptr.2d 279, 902 P.2d 297]; see also *Droeger v. Friedman, Sloan & Ross* (1991) 54 Cal.3d 26, 38 [283 Cal.Rptr. 584, 812 P.2d 931] [" 'It is axiomatic that in the interpretation of a statute where the language is clear, its plain meaning should be followed.' "].) However, if the statutory language is not so clear, "[i]t is our task to construe, not to amend, the statute." (*California Fed. Savings & Loan Assn. v. City of Los Angeles, supra,* at p. 349.) ▪ In construing a statute, it is the role of the judiciary to simply ascertain and declare what is in terms or in substance contained in the statute, not to insert what has been omitted or omit what has been included. In other words, the courts "may not, under the guise of construction, rewrite the law or give the words an effect different from the plain and direct import of the terms used." (*Ibid.*)

▪ Nothing in the context of section 314 justifies an interpretation of the phrase "[e]xposes his person" in any manner contrary to its plain meaning. The statute defines neither the word "expose" nor the word

---

[3]The trial court instructed the jury that the term " 'private part[s]' refers to one's genitals" In supplemental briefing, the People concede the term refers to the genitals. Indeed, the dictionary definition of the term "private parts" is "the external genitalia and excretory organs." (Merriam-Webster's Collegiate Dict. (10th ed. 1999) p. 928.) The Oregon high court has expressly held the term "private parts" to be synonymous with one's genitals. (E.g., *State v. Moore* (1952) 194 Or. 232, 240 [241 P.2d 455, 459], overruled on other grounds in *State v. Walters* (1991) 311 Or. 80, 86, fn. 8 [804 P.2d 1164, 1167] ["It is hornbook law that, whenever and wherever the terms 'privates' or 'private parts' are used as descriptive of a part of the human body, they refer to the genital organs. Every dictionary so defines them."]; cf. *State v. Fly* (1998) 348 N.C. 556, 557 [501 S.E.2d 656, 657] [defendant mooned (exposed his naked buttocks to) the victim; the court included the defendant's anus as an excretory organ within the meaning of the term private parts, but excluded buttocks from the definition].)

"person." Thus, we refer to their respective dictionary definitions. The definition of the word "expose" is "to cause to be visible or open to view." (Merriam-Webster's Collegiate Dict., *supra*, at p. 410.) The word "person" is defined as "the body of a human being; also: the body and clothing (unlawful search of the [person])." (*Id.* at p. 867.) The dictionary does not define "person" as any *part* of the body, but the body as a whole. Thus, in order to expose the person within the plain meaning of the statute, one must "open to view" his or her body in its entirety, that is, in the nude. (*Id.* at p. 410.) A person in a state of complete undress necessarily displays his or her genitals. Under this reading of section 314, intent to expose one's genitals is a necessary element of the offense.

Analysis of this phrase of the indecent exposure statute is curiously absent in California decisional law. At least one Court of Appeal has assumed without analyzing the statutory language that exposure of the "private parts," i.e., genitals, is an essential element of the indecent exposure offense. (*People v. Swearington* (1977) 71 Cal.App.3d 935, 943 [140 Cal.Rptr. 5] ["The felony offense of 'indecent exposure,' set forth in Penal Code section 314, subdivision 1, cannot be committed unless the following two elements are present: (1) the defendant must willfully and lewdly expose the private parts of his person; and (2) such exposure must be committed in a public place or in a place where there are present other persons to be offended or annoyed thereby."].) *In re Smith*, *supra*, 7 Cal.3d 362, on which Massicot relies, does not address the question presented here. There, the issue before the Supreme Court was whether the act of sunbathing in the nude on an isolated beach, without intent to engage in sexual activity, was punishable under section 314. (*Smith*, at p. 364.) The court framed the issue as whether this conduct constituted "lewd" exposure of private parts within the meaning of section 314. (*Smith*, at pp. 366.) It therefore directed its analysis to the lewdness prong of the statute without addressing the statute's language with respect to exposure of the "person." It ruled: "[A] person does not expose his private parts 'lewdly' within the meaning of section 314 unless his conduct is sexually motivated. Accordingly, a conviction of that offense requires proof beyond a reasonable doubt that the actor not only meant to expose himself, but intended by his conduct to direct public attention to his genitals for purposes of sexual arousal, gratification, or affront." (*Ibid.*) Although it does not interpret the phrase "[e]xposes his person," the *Smith* court's statement that section 314 requires an intent to direct public attention to one's genitals is consistent with our interpretation of the plain meaning of the statute as requiring display of the naked genitals.

Perhaps the dearth of judicial interpretation of the word "person" in section 314 results from the fact that convictions under the statute have

uniformly concerned exposure of the genitals, in particular the penis. (*People v. Succop* (1967) 67 Cal.2d 785, 787 [63 Cal.Rptr. 569, 433 P.2d 473] [defendant stood nude outside his home and moved his hand over his private parts in the presence of women and children]; *People v. Merriam* (1967) 66 Cal.2d 390, 392-393 [58 Cal.Rptr. 1, 426 P.2d 161], disapproved on another point in *People v. Rincon-Pineda* (1975) 14 Cal.3d 864, 882 [123 Cal.Rptr. 119, 538 P.2d 247, 92 A.L.R.3d 845] [in first count, defendant "exposed himself and was holding his penis in his hand"; in second count, defendant appeared naked, masturbating in victim's apartment]; *People v. Rehmeyer* (1993) 19 Cal.App.4th 1758, 1765 [24 Cal.Rptr.2d 321] [defendant entered residences nude; court found specific intent to commit felony indecent exposure despite the fact one victim could not see his genitals because a dresser blocked her view]; *People v. Sanchez* (1965) 239 Cal.App.2d 51, 53 [48 Cal.Rptr. 424] [officer saw defendant expose his penis and begin masturbating]; *People v. Evans* (1956) 138 Cal.App.2d 849 [292 P.2d 570].) We believe it is also an indication that the words of the statute "[e]xposes his person, or the private parts thereof" have the plain meaning we propose.

Responding to our request for briefing on this point, the People argue such an interpretation is erroneous in that it renders the remainder of the statute—"or the private parts thereof"—superfluous. We disagree. That clause makes it clear that it is unlawful for a person, otherwise clothed, to expose only their genitals. And the phrase in context—"[e]xposes his person, or the private *parts thereof*"—supports our conclusion that the word "person" signifies the body as a whole. (§ 314, subd. 1, italics added.) We also disagree with the People's contention that *In re Dallas W.* (2000) 85 Cal.App.4th 937 [102 Cal.Rptr.2d 493] (*Dallas*) supports their interpretation of section 314 as rendering unlawful "lewd" displays of any part of the body. In *Dallas*, Division One of the Court of Appeal, Second Appellate District, held a 16-year-old defendant who mooned oncoming traffic did not violate section 314 because he did not do so to "sexually affront" others. (*Dallas*, at pp. 939-940.) In that case, the juvenile court specifically found the defendant "acted only to annoy and affront people and *not* with 'sexual intent in the sense that he intended to arouse himself or a third person by his act,'" and sustained the petition making him a ward of the court. (*Id.* at p. 939, italics in original.) The Court of Appeal reversed the juvenile court's order. It explained that under *In re Smith, supra,* 7 Cal.3d 362, the word "sexual" modifies "arousal," "gratification," and also "affront," and thus CALJIC No. 16.220, apparently relied upon by the juvenile court, was an incorrect statement of the law. (*Dallas*, at p. 939.) The question resolved by the Court of Appeal only involved the lewdness prong of the statute; it did not address the scope of the phrase "[e]xposes his person" in the statute or any related issue. We reject any attempt to read the Court of Appeal's decision in *Dallas*

to implicitly hold that exposure of the buttocks with lewd intent is sufficient conduct to violate section 314; *Dallas* cannot be relied upon as authority for a proposition it did not address. (*People v. Nguyen* (2000) 22 Cal.4th 872, 879 [95 Cal.Rptr.2d 178, 997 P.2d 493].)

Our conclusion is bolstered by the fact the common law offense of indecent exposure requires display of the genitals. ■ One tenet of statutory construction is that statutes are presumed to codify common law rules absent clear language disclosing an intent to depart from those rules. (*California Assn. of Health Facilities v. Department of Health Services* (1996) 16 Cal.4th 284, 297 [65 Cal.Rptr.2d 872, 940 P.2d 323]; *People v. Zikorus* (1983) 150 Cal.App.3d 324, 330 [197 Cal.Rptr. 509] ["There is a presumption that a statute does not, by implication, repeal the common law."].) Accordingly, a statute will be construed in light of common law principles unless it contains clear and unequivocal language that discloses an intent to depart from, alter, or abrogate the common law rule concerning a particular subject matter. (*California Assn. of Health Facilities*, at p. 297.) ■ Given the absence of express definitions in section 314, we may construe the statute to encompass indecent exposure as it was defined at common law. (2A Sutherland, Statutory Construction (4th ed. 1984 rev.) § 50.03, p. 435.)

Our review of this question indicates the common law offense of indecent exposure targeted what psychologists term exhibitionism, or genital exposure. The California Supreme Court engaged in a comprehensive discussion of the crime of indecent exposure and its common law origins in *In re Lynch* (1972) 8 Cal.3d 410 [105 Cal.Rptr. 217, 503 P.2d 921] (*Lynch*). In *Lynch*, the court examined the history of the offense in determining its seriousness for purposes of the defendant's claim his punishment was constitutionally excessive. While the court did not expressly define the conduct encompassed by the offense, it plainly identified it as the disorder known as exhibitionism. The court began with historical background: "The common law offense [of indecent exposure] was subjected to statutory regulation in the Vagrancy Act of 1824. (5 Geo. 4, ch. 83.) Under section 4 of that act every person guilty of indecent exposure was deemed 'a rogue and a vagabond,' but could be sentenced to jail for not more than three months. Under sections 5 and 10 of the act a person guilty of indecent exposure with a prior conviction of the same offense was deemed 'an incorrigible rogue,' but could be sentenced to jail for not more than one year. Subsequently, the offense of indecent exposure in the streets was declared punishable under the Town Police Causes Act of 1847 (10 & 11 Vict., ch. 89, § 29), but the punishment was a fine of not more than 40 shillings or a jail sentence of not more than 14 days. [¶] In California a similar pattern prevailed until the present penalty was

added in 1952. (Stats. 1953, First Ex. Sess. 1952, ch. 23, § 4, p. 381.) Indeed, there was no statute whatever proscribing indecent exposure until the enactment of the Penal Code of 1872. At that time the offense was declared to be a misdemeanor, and there was no increased penalty for subsequent convictions. It was therefore punishable in all cases by a maximum of six months in jail and/or a fine of $500. . . . This was the law of our state for 80 years." (*Id.* at p. 429, fn. omitted.)

The *Lynch* court turned to a discussion of the behavior behind the offense: "The low-key approach of the common law is also that adopted by modern psychiatric science. Clinical studies 'support and confirm the traditional legal provisions which have treated this behavior as a social nuisance, as disorderly conduct rather than an offence causing personal injury.' " (*Lynch, supra,* 8 Cal.3d at pp. 429-430, citing Gigeroff et al., Sex Offenders on Probation: The Exhibitionist (1968) 32 Fed. Probation (No. 3) 17, 21 (hereafter Gigeroff).) "This is so because the commission of the offense invariably entails no physical aggression or even contact: 'It is generally agreed that the person exposing seeks some reaction from the person exposed to, although exactly what reaction is not clear. The exposure occurs at inappropriate times and places and would seem to be calculated to surprise the female. It is doubtful that the reaction sought is one of pleasure and in many cases it seems to be intended to evoke fear and shock. It is generally agreed that the exhibitionist does not seek further contact with the victim; on the contrary, he is afraid of it. There is usually some appreciable distance which separates the exhibitionist and the object and rarely does it occur when the parties are in close proximity.' " (*Lynch,* at p. 430, citing Gigeroff, at p. 19, italics omitted.) The court also looked at the "typical offender," observing that the " 'vast majority of exhibitionists are relatively harmless offenders; mostly they are public nuisances and sources of embarrassments.' " (*Lynch,* at p. 430, citing the report of Karl M. Bowman, Medical Superintendent of the Langley Porter Clinic, in 2 Assem. J. (1951 Reg. Sess.) p. 2847 (Bowman).)

The court ended by analyzing the level of violence involved in the conduct: "Finally, although indecent exposure is not a 'victimless' crime, any harm it may cause appears to be minimal at most. As noted above, the nonviolence of the conduct ensures there is no danger of physical injury to the person who witnesses the exposure. Nor is there any convincing evidence that the person is likely to suffer either long-term or significant psychological damage." (*Lynch, supra,* 8 Cal.3d at p. 431, citing Mohr et al., Pedophilia and Exhibitionism (1964) p. 121 (hereafter Mohr).) "Indeed, the statute itself defines the offense as exposure in public or in any place where there are persons present who may merely be 'offended or annoyed' thereby.

. . . Such an 'annoyance' is not a sufficiently grave danger to society to warrant the heavy punishment of a life-maximum sentence." (*Lynch*, at p. 431.)

From *Lynch* and its discussion, it is evident that at common law the conduct sought to be prohibited, and which gave rise to the Legislature's enactment of section 314, is exhibitionism. Both texts cited by the *Lynch* court—Gigeroff and Mohr—define the act of exhibitionism as consisting of the display of the male genital organs for sexual gratification. (See Gigeroff, *supra*, 32 Fed. Probation at p. 19 ["Exhibitionism can be defined as the expressed impulse to expose the male genital organ to an unsuspecting female as a final sexual gratification."]; Mohr, *supra*, at p. 119 ["NATURE OF THE ACT [¶] The act of exposure can range from a partial showing of the flaccid penis without a conscious experience of sexual satisfaction to a full exposure of the genitalia with erect penis, masturbation, and an intense experience of sexual satisfaction."].) The Bowman report, which was prepared in connection with a sex crimes study authorized by the Legislature in 1949 (*Lynch, supra*, 8 Cal.3d at p. 430, fn. 18), likewise identified exhibitionism as involving genital exposure. (Bowman, *supra*, 2 Assem. J. at p. 2847 ["The biologic basis for exhibitionism appears to be the tendency of male animals to strut and show off before the females, although in the higher apes there has been reported some exhibitionism of the genitals on the part of the female as an invitation to the male to carry out sexual intercourse."].)

Both American Jurisprudence Second and Corpus Juris Secundum indicate the common law definition of indecent exposure required exposure of one's private parts or genitals. (See 50 Am.Jur.2d (1995) Lewdness, Indecency, and Obscenity, § 17, pp. 291-292 ["Statutes have generally adopted the common-law requirements of the offense of indecent exposure; to convict someone of indecent exposure, there must be shown a willful and intentional exposure of the private parts of the body. In addition, the act complained of generally must have been committed in a public place or a place open to view of the public at large, or under circumstances where anyone present is likely to be offended by it." (Fns. omitted.)]; 67 C.J.S. (1978) Obscenity, § 10, pp. 49-50 [defining the offense as "the exhibition of those private parts of the person" and stating "[t]he purpose of such laws is to protect the public from shocking and embarrassing displays of sexual activity"].)

We have found nothing to indicate the Legislature intended to alter the conduct forbidden by the common law by its use of the phrase "[e]xposes his person" in describing the proscribed act in section 314. And our interpretation of the phrase finds support in other jurisdictions' descriptions of the common law offense of indecent exposure. (*State v. Chiles* (1989) 53

Wash.App. 452, 456 [767 P.2d 597, 599] [defining the common law offense of indecent exposure as consisting of "exposure in public of the *entire person*, or of parts that should not be exhibited" (italics added)]; see also *Messina v. State* (1957) 212 Md. 602, 606 [130 A.2d 578, 580].) Thus, the common law usage gives certainty to the phrase "[e]xposes his person" as meaning exposure of the entire unclothed body.

Our construction of section 314's language and our conclusion that indecent exposure requires genital exposure is also consistent with those of other courts analyzing laws prohibiting exposure of the "person" as well as the genitals. In *State v. Wymore* (1977) 98 Idaho 197 [560 P.2d 868], the city ordinance at issue prohibited " 'any person, for the purpose of arousing or gratifying sexual desire for himself or any person to publicly expose his person or his genitals.' " (*Id.* at p. 869.) In that case, as a female witness passed by the defendant, who was sitting in a truck, he motioned to her to get in and several times repeated a slang term for the female genitalia. (*Ibid.*) The witness testified she saw the man gesture with his hand as though he were masturbating and heard him moaning, but did not see his sexual organs or private parts. (*Ibid.*) The Idaho Supreme Court reversed the defendant's conviction, holding the lower court erred in finding the defendant's conduct fell within the proscription of the indecent exposure statute as indecent exposure of his " 'person.' " (*Id.* at pp. 869-870.) It reasoned: "To hold otherwise would require interpretation of the term 'person' as contrasted with the terms 'private parts' or 'genitals'. Such attempted interpretation might well render the ordinance hopelessly vague and thus pose questions of its constitutionality. Doubts concerning interpretation of statutes are to be resolved in favor of that which will render them constitutional. [Citations.] [¶] Such might well require this Court to determine if tight-fitting sweaters, trousers or beach attire or the engaging in certain types of dance movement might constitute 'indecent exposure' because it constituted exposure of 'the person' for the purpose of arousing or gratifying sexual desire." (*Id.* at p. 869.) It continued by quoting the lower court's comments: " 'Of course, there are people of both sexes possessing by nature that magnetism loosely referred to as sex appeal who can arouse sexual desires by merely standing still or by walking down the street in a normal manner. No statute which would cause a person to be arrested for that could possibly stand.' [¶] Those comments by both the lower courts well illustrate the morass into which this Court should not, at this time at least, venture." (*Id.* at pp. 869-870)

In *Duvallon v. District of Columbia* (D.C. 1986) 515 A.2d 724, 727 (*Duvallon*), the court was presented with the question of whether the defendant's exposure of her buttocks and the sides of her breasts was proscribed by then District of Columbia Code Annotated, former section 22-1112(a)

(1981) (now D.C. Code Ann. § 22-1312), which provided: " 'It shall not be lawful for any person or persons to make any obscene or indecent exposure of his or her person, or to make any lewd, obscene, or indecent sexual proposal, or to commit any other lewd, obscene, or indecent act in the District of Columbia . . . .' " (*Duvallon,* at p. 725, fn. 1.) The court expressly stated that its task was to determine the "meaning of the term 'person', the exposure of which is prohibited." (*Id.* at p. 725.) As here, the court first observed that Maryland courts, American Jurisprudence Second and Corpus Juris Secundum each defined the common law offense of indecent exposure as exposure of the genitals. (*Id.* at p. 726, citing *Dill v. State* (1975) 24 Md.App. 695, 697-698 [332 A.2d 690, 693].)

The *Duvallon* court next found both English and American common law cases compel the conclusion that indecent exposure was limited to exposure of the genitals because they consistently referred to the defendants' exposure of their " 'private parts.' " (*Duvallon, supra,* 515 A.2d at pp. 726-728.) Significant to the court was that the word "person" was held to be a euphemism for the penis. (*Id.* at p. 727, citing *Evans v. Ewels* (1954) 2 All E.R. 22 [1972 WL 37796].)[4] In view of the cited authorities, the court construed the word "person" as used in the District of Columbia statute consistent with the view that the crime required genital exposure. It concluded: "Our statute refers to the '. . . indecent exposure of *his* or *her* person . . .' (emphasis added). It is the indecent exposure of the comparable portions of the male and female anatomy that constitutes the crime. In other words, the indecent exposure of human genitalia is the offense. Since Ms. Duvallon did not expose her genitals, she did not violate § 22-1112(a)." (*Duvallon,* at p. 728.)

Our construction of the phrase "[e]xposes his person" in section 314 comports with the common law offense of indecent exposure, which requires one to expose his or her genitals. We agree with the observations of the court in *State v. Wymore, supra,* 560 P.2d 868, when it expressed concern over a proposed interpretation of an indecent exposure statute that would permit an arrest under that offense if a person wore a bathing suit with the intent to direct public attention at him or herself for purposes of sexual arousal or affront. But we do not address the constitutionality of the statute, as that question is not before us. Our interpretation of the statute avoids such infirmities. Because Massicot did not display his bare genitals at any time to his victim, his convictions under section 314 must be reversed.

---

[4]Our Legislature could not have intended to give that meaning to the word "person" in section 314 because it would cause the next phrase, "or the private parts thereof," to be redundant.

## DISPOSITION

The judgment (order granting probation) is reversed as to Massicot's convictions under Penal Code section 314. In all other respects, the judgment is affirmed.

Kremer, P. J., and McDonald, J., concurred.