Filed 5/7/21  P. v. Franco CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | B305769 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. VA142960) |
| v. | |
| SALVADOR A. FRANCO, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County.  John A. Torribio, Judge.  Affirmed.

Danalynn Pritz, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Charles S. Lee and Stephanie A. Miyoshi, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Salvador Franco appeals the summary denial of a petition for resentencing under Penal Code[1] section 1170.95.

Following a jury trial in 2018, appellant was convicted of the second degree murder of Raul Cervantes in violation of section 187, subdivision (a), and sentenced to a term of 15 years to life in state prison. Appellant filed a petition for resentencing under section 1170.95 on February 24, 2020. The trial court summarily denied the petition after finding that the prosecution did not proceed on a felony-murder theory or under the natural and probable consequences doctrine. Appellant contends the trial court erred in denying his petition without appointing counsel and without giving the parties an opportunity to brief the matter. We disagree: The trial court did not err in conducting its prima facie review for eligibility without first appointing counsel. Although the trial court improperly relied on the preliminary hearing transcript and its own memory of the case, the court correctly ruled appellant is ineligible for relief under section 1170.95 as a matter of law because appellant was not convicted under a felony-murder theory or the natural and probable consequences doctrine.

## FACTUAL BACKGROUND[2]

Around 1:40 in the afternoon on July 30, 2016, Raul Cervantes was fatally shot as he stood talking with another man

---

[1] Undesignated statutory references are to the Penal Code.

[2] This statement of facts is drawn from the record of appellant's direct appeal of his conviction (case number B289440), which he abandoned and was subsequently dismissed. In the instant appeal, we granted respondent's request for judicial notice of the record from the original appeal, which

2

on the Gage Bridge in Bell Gardens.  The shooter wore an oversized black hoodie and an LA Dodgers hat, which concealed his face.  One witness saw the shooter run up the embankment and onto the bridge before shooting Cervantes in the side with what appeared to be a long-barreled rifle.

Officers recovered four expended .22-caliber long rifle casings, which could have been fired from a rifle or a handgun.  A dog handler traced the shooter's path down the embankment, across Gage Avenue, and onto River Drive, where the shooter appeared to have fled in a car.  Using surveillance video, police identified the car as a gray Nissan, which Jazmine N. had rented the day before from Hertz.

Jazmine lived with appellant Franco in a house near the Gage Bridge.  On July 30, 2016, Jazmine awoke to find Franco had taken the rental car.  Jazmine called Franco, and he told her not to call him because he "was doing something right now."  Later when she heard police activity on the Gage Bridge, Jazmine called Franco again, and this time he told her to meet him at a particular house on Vinevale Avenue, a Bell Gardens Locos gang hangout.  When Jazmine arrived at the house Franco told her what had happened on the bridge.  He sounded panicked and scared.

Franco's codefendant, Manuel Garibay, was arrested about a month after the shooting.  While Garibay was in custody, police placed a paid informant in his cell, and their recorded conversation was played for the jury.  Garibay told the informant he laid down in the seat of the car and his "homie" drove him to

---

includes the clerk's transcripts, jury instructions, and reporter's transcripts from the trial.

the spot where he got dropped off, and then he "did [his] thing." Garibay said he "got up on them" and "hit" "[b]oth of them" "[l]ike, 15 times." Garibay described the gun he used as "a big-ass rifle." After the shooting Garibay ran across the street, jumped over the guardrail, and ran down the embankment where his "homie" was waiting in the gray Nissan. Garibay hopped in the car and they took off.

Garibay told the informant he was wearing a black sweater with a hood and an "LA" hat that covered his face. Both Franco and Garibay were admitted members of the Bell Gardens Locos criminal street gang. Garibay told the informant the victim was a member of the rival Walnut Street gang. When an officer walked Franco past Garibay's cell, Garibay identified Franco to the informant as his "homie."

Franco's and Garibay's phones' cell tower usage around the time of the shooting was consistent with the movement of the gray Nissan seen in the surveillance videos near the Gage Bridge.

## DISCUSSION

### Summary Denial of the Section 1170.95 Petition Without Appointment of Counsel Was Appropriate Because Appellant Was Ineligible for Relief as a Matter of Law

#### A. *Relevant proceedings*

In his petition for resentencing appellant averred: (1) a complaint, information, or indictment was filed against him that allowed the prosecution to proceed under the theory of felony-murder or the natural and probable consequences doctrine; (2) he was convicted of first or second degree murder pursuant to the felony-murder rule or the natural and probable consequences doctrine; (3) he could not now be convicted of first or second

4

degree murder because of the changes made to sections 188 and 189, which became effective on January 1, 2019; (4) he was not the actual killer; (5) he did not, with intent to kill, aid or abet the actual killer; (6) he was not a major participant in the felony, nor did he act with reckless indifference to human life; and (7) he was convicted of second degree murder under the natural and probable consequences doctrine and could not now be convicted of murder because of the changes made to sections 188 and 189. Appellant supported his petition with numerous minute orders from his trial and requested that the court appoint counsel.

On March 11, 2020, the superior court summarily denied the petition without a hearing and without appointing counsel. Stating that it "clearly remember[ed] this case," the court drew from the preliminary hearing transcript to describe the facts of the case: "The petitioner dropped off the co-defendant who went up the stairs to the roadway with the sole purpose of shooting the victims. When co-defendant reached the top of the stairs he ambushed the victims. Then the co-defendant ran back down the stairs where petitioner picked him up." While in custody, the shooter (codefendant) told an informant "he was dropped off by petitioner on one side of the bridge went up the stairs and shot the victims, ran across the bridge to the opposite side where he was picked up by petitioner."

The court denied the petition, finding that "[t]hese facts do not bring into play the criteria of 1170.95(a)." The court explained that appellant "was clearly an aider and abettor," and the People had not proceeded under a felony-murder theory or the natural and probable consequences doctrine. The court reiterated that it had reviewed the transcript of the preliminary hearing in reaching its decision.

**B.** *The trial court may deny a section 1170.95 petition in the prima facie stage of review without first appointing counsel if the record of conviction demonstrates the petitioner is ineligible for relief as a matter of law.*

The Legislature enacted Senate Bill No. 1437 to "amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f); *People v. Martinez* (2019) 31 Cal.App.5th 719, 723 (*Martinez*).) To accomplish this objective, Senate Bill No. 1437 amended section 188, subdivision (a)(3), defining malice, to require that all principals to murder must act with express or implied malice to be convicted of that crime, with the exception of felony murder under section 189, subdivision (e). (Stats. 2018, ch. 1015, § 2.) The amendment further provides that "[m]alice shall not be imputed to a person based solely on his or her participation in a crime." (§ 188, subd. (a)(3); *People v. Lopez* (2019) 38 Cal.App.5th 1087, 1103, review granted Nov. 13, 2019, S258175; *People v. Lewis* (2020) 43 Cal.App.5th 1128, 1135, review granted Mar. 18, 2020, S260598 (*Lewis*).) The Legislature also amended section 189 to include the new requirement that a participant in a specified felony during which a death occurs may be convicted of murder for that death only if it is proved that the defendant was the actual killer, an aider and abettor to the murder who acted with the intent to kill, or a major participant in the underlying felony who acted with reckless indifference to human life. (Stats. 2018, ch. 1015, § 3; § 189, subd. (e)(1)–(3).)

In addition to these amendments, Senate Bill No. 1437 added section 1170.95 to provide a procedure by which those convicted of felony murder or murder under a natural and probable consequences theory may seek retroactive relief if they could no longer be convicted of murder because of the changes to sections 188 or 189.  (*Martinez, supra,* 31 Cal.App.5th at pp. 722–723.)

If the petition meets the requirements of section 1170.95, subdivisions (a) and (b), the superior court undertakes a two-step prima facie analysis set forth in subdivision (c) before an order to show cause may issue.[3]  (*People v. Nunez* (2020) 57 Cal.App.5th 78, review granted Jan. 13, 2021, S265918 (*Nunez*); *People v. Verdugo* (2020) 44 Cal.App.5th 320, 327–328, review granted Mar. 18, 2020, S260493 (*Verdugo*); *Lewis, supra,* 43 Cal.App.5th at pp. 1136, 1140, rev.gr.)  In the first step of this analysis, the superior court conducts a sua sponte screening of the petition to verify the petitioner's eligibility for relief under the statute.  At this stage, the court may "examine readily ascertainable information in the record of conviction and . . . if that threshold review 'establishes the petitioner is ineligible for relief as a

---

[3] Section 1170.95, subdivision (c) provides:  "The court shall review the petition and determine if the petitioner has made a prima facie showing that the petitioner falls within the provisions of this section.  If the petitioner has requested counsel, the court shall appoint counsel to represent the petitioner.  The prosecutor shall file and serve a response within 60 days of service of the petition and the petitioner may file and serve a reply within 30 days after the prosecutor response is served.  These deadlines shall be extended for good cause.  If the petitioner makes a prima facie showing that he or she is entitled to relief, the court shall issue an order to show cause."

matter of law because he or she was convicted on a ground that remains valid notwithstanding Senate Bill [No.] 1437's amendments to sections 188 and 189' " (*Nunez*, at p. 89, rev.gr.), the court may dismiss the petition without the appointment of counsel or briefing from the parties.  (*Lewis*, *supra*, 43 Cal.App.5th at p. 1140, rev.gr.; *Verdugo*, *supra*, 44 Cal.App.5th at p. 329, rev.gr.; *People v. Offley* (2020) 48 Cal.App.5th 588, 597; *People v. Edwards* (2020) 48 Cal.App.5th 666, 674–675, review granted July 8, 2020, S262481 (*Edwards*); *People v. Tarkington* (2020) 49 Cal.App.5th 892, 900, review granted Aug. 12, 2020, S263219 (*Tarkington*); but see *People v. Cooper* (2020) 54 Cal.App.5th 106, 109, review granted Nov. 10, 2020, S264684 (*Cooper*).)

On the other hand, if the record of conviction does not indicate ineligibility as a matter of law, the court must proceed to step two of the prima facie analysis.  There, section 1170.95, subdivision (c) requires the court to appoint counsel if requested and accept briefing from the parties on the issue of whether the petitioner is "entitled to relief."[4]  (*Verdugo*, *supra*, 44 Cal.App.5th

---

[4] If, after the parties' briefing, the petitioner has made a prima facie showing that he is entitled to relief because there remains no proof of ineligibility as a matter of law, "the court shall issue an order to show cause" why relief should not be granted.  (§ 1170.95, subd. (c); see *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 851 ["A prima facie showing is one that is sufficient to support the position of the party in question"]; *In re Edward H.* (1996) 43 Cal.App.4th 584, 593 ["A 'prima facie' showing refers to those facts which will sustain a favorable decision if the evidence submitted in support of the allegations by the petitioner is credited"].)

at pp. 332–333, rev.gr.)  But as in the initial prima facie review, the court does not engage in factfinding and draws "all factual inferences in favor of the petitioner."  (*Verdugo*, at p. 329; *People v. Drayton* (2020) 47 Cal.App.5th 965, 982.)

As appellant notes, there is a split of authority on the issue of when a court must appoint counsel and give the parties an opportunity to brief the matter—either before or after performing any review under section 1170.95, subdivision (c), and the issue is currently pending before the California Supreme Court.[5]  While the majority of cases hold a court should conduct an initial prima facie review to determine whether, in light of the court file, the petition presents an arguable claim for relief before appointing counsel and accepting briefing, one court has disagreed.  (*Cooper*,

---

At this point, the People may concede that relief should be granted, or in a hearing to determine whether the petitioner is entitled to relief, bear the burden of proving beyond a reasonable doubt that the petitioner is ineligible.  (§ 1170.95, subd. (d).)  At such a hearing, "[t]he prosecutor and the petitioner may rely on the record of conviction or offer new or additional evidence to meet their respective burdens."  (§ 1170.95, subd. (d)(3).)

[5] The California Supreme Court has undertaken review of the following issues in *Lewis*, *Verdugo*, *Edwards*, *Tarkington*, and *Cooper*:  "(1) May superior courts consider the record of conviction in determining whether a defendant has made a prima facie showing of eligibility for relief under Penal Code section 1170.95? (2) When does the right to appointed counsel arise under Penal Code section 1170.95, subdivision (c)?"  (*Lewis*, S260598 <https://appellatecases.courtinfo.ca.gov/search/case/mainCaseScreen.cfm?dist=0&doc_id=2311967&doc_no=S260598&request_token=NiIwLSEmXkg%2BWzBVSCJdUElJQEA0UDxTJSJeUzNRMCAgCg%3D%3D> [as of Nov. 12, 2020], archived at <https://perma.cc/H7FP-QRMP>.)

*supra*, 54 Cal.App.5th at p. 112, rev.gr.)  In *Cooper*, the court held that upon the filing of a "facially sufficient petition requesting counsel," that is, one "that includes all the information required under section 1170.95, subdivision (b)," the court must immediately appoint counsel and accept briefing from the parties in accordance with section 1170.95, subdivision (c) before the court may deny the petition.  (*Cooper*, *supra*, 54 Cal.App.5th at pp. 112, 114, rev.gr.)

*Cooper* thus interprets section 1170.95, subdivision (c) to permit only one prima facie review before an order to show cause issues.  (*Cooper*, *supra*, 54 Cal.App.5th at p. 123, rev.gr.)  According to *Cooper*, the first sentence of section 1170.95, subdivision (c) is merely "a topic sentence summarizing the trial court's task before issuing an order to show cause, and the following sentences . . . specify the procedure in undertaking that task." (*Cooper*, at p. 118, rev.gr.)  But this reading of the statute renders the first sentence of subdivision (c) of section 1170.95 superfluous, effectively striking it from the statute.  Courts may not rewrite statutes in this manner.  (*People v. Franco* (2018) 6 Cal.5th 433, 437 [" ' "[c]ourts should give meaning to every word of a statute if possible, and should avoid a construction making any word surplusage" ' "]; *People v. Massicot* (2002) 97 Cal.App.4th 920, 925 ["In construing a statute, it is the role of the judiciary to simply ascertain and declare what is in terms or in substance contained in the statute, not to insert what has been omitted or omit what has been included"].)

As in all statutory interpretation, our reading of section 1170.95 must give meaning to all parts of the statute to the extent possible.  (*People v. Shabazz* (2006) 38 Cal.4th 55, 67 [" 'The meaning of a statute may not be determined from a single

word or sentence; the words must be construed in context, and provisions relating to the same subject matter must be harmonized to the extent possible' "]; *Verdugo*, *supra*, 44 Cal.App.5th at p. 329, rev.gr.)  "To that end, we generally must 'accord[] significance, if possible, to every word, phrase and sentence in pursuance of the legislative purpose,' and have warned that '[a] construction making some words surplusage is to be avoided.' " (*People v. Valencia* (2017) 3 Cal.5th 347, 357; *People v. Abrahamian* (2020) 45 Cal.App.5th 314, 332.)

Because the *Cooper* court's reading of section 1170.95, subdivision (c) excises a portion of the statutory language, we do not find its interpretation to be persuasive.  Following the majority of courts to consider the issue, and pending further guidance from our Supreme Court, we conclude that the trial court did not err in conducting a prima facie review for eligibility under section 1170.95 without first appointing counsel or conducting a hearing.

**C. *Appellant is ineligible for relief under section 1170.95 as a matter of law because the record demonstrates he was not convicted under the felony-murder rule or the natural and probable consequences doctrine.***

To be eligible for relief under section 1170.95, the petitioner must make a prima facie showing that he or she "could not be convicted of first or second degree murder because of changes to Section 188 or 189 made effective January 1, 2019." (§ 1170.95, subd. (a)(3).)  Here, the trial court correctly denied appellant's petition because the record reveals he was convicted on a theory of murder that "remains valid notwithstanding Senate Bill [No.] 1437's amendments to sections 188 and 189." (*Verdugo*, *supra*, 44 Cal.App.5th at p. 330, rev.gr.)  Specifically, the jury

instructions given at trial establish that appellant was convicted of murder as a direct aider and abettor. He could not have been convicted under a felony-murder theory or the natural and probable consequences doctrine for the simple reason that the jury was not instructed on either of these theories.

Although the trial court denied appellant's petition on other grounds, we will uphold the ruling on appeal if it is supported by any legally correct theory, even if the court's stated reasons were incorrect. (*People v. Hopson* (2017) 3 Cal.5th 424, 459 ["a ruling will not be disturbed on appeal merely because it was given for a wrong reason, if the ruling would otherwise be correct ' " 'upon any theory of the law applicable to the case,' " ' and ' " 'regardless of the considerations which may have moved the trial court to its conclusion' " ' "]; *People v. Zapien* (1993) 4 Cal.4th 929, 976; *D'Amico v. Board of Medical Examiners* (1974) 11 Cal.3d 1, 19; see also *People v. Smithey* (1999) 20 Cal.4th 936, 972.)

The jury in this case was instructed on aiding and abetting liability (CALCRIM Nos. 400 & 401) and the definition and elements of murder (CALCRIM Nos. 500, 520 & 521). No instructions on felony murder or the natural and probable consequences doctrine were given.[6] Instead, all of the

---

[6] Such instructions necessarily would have included CALCRIM No. 403, the pattern instruction on the natural and probable consequences doctrine, and CALCRIM No. 540B, the instruction on first degree felony murder, coparticipant allegedly committed fatal act. In addition, had the prosecution proceeded on multiple murder theories, the trial court would also have given CALCRIM No. 548, Murder: Alternative Theories.

instructions on murder required a finding that appellant acted with malice.[7]

---

[7] Although the instructions on implied malice murder and aiding and abetting under the natural and probable consequences doctrine both refer to the "natural and probable consequences" of the defendant's act, the concepts are distinctly different. (*People v. Soto* (2020) 51 Cal.App.5th 1043, 1056, review granted Sept. 23, 2020, S263939 (*Soto*).) *Soto* explained the distinction between implied malice and the natural and probable consequences doctrine: "Implied malice is a mental state for the commission of the crime of second degree murder, either by the principal or as an aider and abettor . . . to murder." (*Ibid*., rev.gr.) The natural and probable consequence doctrine, on the other hand, "is a theory of liability by which an aider and abettor who intends to aid a less serious crime can be convicted of a greater crime. This doctrine comes into play when 'an accomplice assists or encourages a confederate to commit one crime, and the confederate commits another, more serious crime (the nontarget offense).' [Citation.] Applying the natural and probable consequences doctrine, 'a defendant may be held criminally responsible as an accomplice not only for the crime he or she intended to aid and abet (the target crime), but also for any other crime that is the "natural and probable consequence" of the target crime.' [Citation.] Unlike aiding and abetting implied malice murder, which requires the aider and abettor to (at least) share the mental state of the actual perpetrator of implied malice murder, ' "aider and abettor culpability under the natural and probable consequences doctrine is not premised upon the intention of the aider and abettor to commit the nontarget offense [e.g., murder] because the nontarget offense was not intended at all." ' " (*Id*. at p. 1058, rev.gr.)

Here, appellant's jury necessarily found him guilty of murder based on his own actions and mental state as a direct

13

A direct aider and abettor can be convicted of murder notwithstanding the amendments to sections 188 and 189, which changed nothing with regard to direct aider and abettor liability. "One who directly aids and abets another who commits murder is thus liable for murder under the new law just as he or she was liable under the old law." (*Lewis*, *supra*, 43 Cal.App.5th at p. 1135, rev.gr.) Accordingly, appellant was required to make a prima facie showing that he was not convicted as a direct aider and abettor and thereby " 'falls within the provisions of' the statute." (*Lewis*, at p. 1137; § 1170.95, subds. (a)(3) & (c).) He failed to do so. His petition was therefore properly denied on the ground that he was not entitled to relief as a matter of law because he was not convicted under a theory of felony murder or natural and probable consequences, the two theories affected by Senate Bill No. 1437.

In sum, the allegations in the petition that appellant "could not now be convicted of 1st or 2nd degree murder because of changes made to Penal Code §§ 188 and 189" and that he was "convicted of 2nd degree murder under the natural and probable consequences doctrine" are contradicted by the record of conviction. Because the record of conviction plainly shows that appellant does not fall within the provisions of the statute, he cannot make the first prima facie showing required under section 1170.95, subdivision (c). Appellant is thus ineligible for relief as a matter of law, and the superior court properly denied his

---

aider and abettor. The natural and probable consequences language in the implied malice instruction required the jury to find malice, and thus did not transform appellant's conviction into one for murder under the natural and probable consequences doctrine. (See *Soto*, *supra*, 51 Cal.App.5th at p. 1059.)

14

petition.  (§ 1170.95, subd. (c); *Verdugo, supra*, 44 Cal.App.5th at p. 329, rev.gr.)

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED.


LUI, P. J.

We concur:


ASHMANN-GERST, J.


CHAVEZ, J.