**Richmond**

WALTER GEOFFREY HART

v.

COMMONWEALTH OF VIRGINIA

No. 1891-92-2

Decided March 22, 1994

COUNSEL

Joseph W. Kaestner (Kaestner & Associates, on brief), for appellant.

Leah A. Darron, Assistant Attorney General (Stephen D. Rosenthal, Attorney General, on brief), for appellee.

OPINION

**ELDER, J.**—Walter Geoffrey Hart appeals his conviction under Code § 18.2-387 for indecent exposure. That statute provides that "[e]very person who intentionally makes an obscene display or exposure of his person, or the private parts thereof, in any public place . . . shall be guilty of a Class 1 misdemeanor." On appeal, appellant argues the evidence was insufficient to show (1) that his behavior constituted "an exposure of his person, or the private parts thereof" and (2) that his behavior was obscene. For the reasons that follow, we affirm appellant's conviction.

On June 10, 1992, appellant entered the office supply store where Bonnie Faulk worked and asked her for help locating a refill for his pen. While Faulk was assisting him, she looked up and saw that "he had dropped his pants," which were "real short running shorts," and that he was then "wearing [only] a real skimpy G-string." Although the G-string covered his penis, "it was very form-fitting," such that Faulk could see the outline of his penis. She also testified that his buttocks and remaining pubic area were exposed and that she could see his pubic hair. Appellant picked up his shorts and said, "These darn things just keep falling off." He then modeled for her, slowly turned around, and asked her what she "[thought] of the whole picture." He told her "he had searched all over town for this particular swim suit" and that he liked to wear it, or nothing at all, when he went out on his boat. He also said the shorts "were great" because they attached with velcro, which "gave easy access to women who wanted him." After being in the store for ten or fifteen minutes, appellant put his shorts back on and left, but returned six days later at almost the same time wearing the same shorts. When Faulk's manager came out of the back room, appellant "started to look around, dart his eyes. He got real nervous, real shaken up, . . . grabbed a pen[,] . . . immediately went to pay for it," and then left.

When interviewed by the police, appellant stated that his shorts had fallen off accidentally during his first visit to the store and that "he didn't know" why he wore those same shorts into the store on the second occasion but that he eventually threw them away.

We conclude that the evidence was sufficient to support appellant's conviction. On appeal of a criminal conviction, we review

the evidence in the light most favorable to the Commonwealth, "granting to it all reasonable inferences fairly deducible therefrom." *Martin v. Commonwealth*, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987) (citing Code § 8.01-680). As quoted above, Code § 18.2-387 requires proof that defendant intentionally made an obscene display or exposure of his person, or the private parts thereof, in any public place. Appellant does not challenge the fact that his conduct occurred in a public place, nor does he contend on appeal that it was unintentional. The only determinations remaining to be made are whether the portions of his body exposed fell within the proscriptions of the statute, and whether the evidence was sufficient to support the trial court's conclusion that appellant's behavior was obscene.

### A.

Code § 18.2-387 does not define the terms, "person, or the private parts thereof." Under settled legal principles, however, and as pointed out by the Commonwealth, "[t]he Code of Virginia constitutes a single body of law, and other sections can be looked to where the same phraseology is employed." *King v. Commonwealth*, 2 Va. App. 708, 710, 347 S.E.2d 530, 531 (1986) (defining term "manufacture" as used in Code § 18.2-248.1(a)). Although the term, "private parts," is not defined in the Code, other related phrases make clear the legislature's intent to include the groin and buttocks within that category. In Code § 18.2-67.10(2), which defines terms used in the article proscribing various types of criminal sexual assault, for example, "intimate parts" include not only the genitalia, but also the "anus, groin, breast or buttocks." Similarly, Code § 18.2-390, which restricts the sale and loan of certain items to juveniles, defines "nudity" as "a state of undress so as to expose the human . . . genitals, pubic area or buttocks." Clearly, the portions of his body that appellant exposed fell within the proscriptions of the statute.

### B.

As defined in relevant part in Code § 18.2-372, "obscene" means

> that which, considered as a whole, has as its dominant theme or purpose an appeal to the prurient interest in sex, that is, a shameful or morbid interest in nudity, sexual conduct, [or]

sexual excitement . . . and which goes substantially beyond customary limits of candor in description or representation of such matters . . . .[1]

Under this definition, the evidence was clearly sufficient to support the trial court's conclusion that appellant's exposure of his "private parts" was obscene. The trial court was entitled to conclude that appellant's statements, in conjunction with his actions, clearly established that his actions had as their dominant purpose an appeal to the prurient interest in sex as defined in the Code. It is clear that appellant's statements are not proscribed. The statute in question prohibits an obscene exposure in a public place. Appellant's statements merely aided in establishing his intent in acting as he did.

Clad in a skimpy G-string which covered only his penis and anus, leaving his pubic area and buttocks exposed, appellant modeled for Faulk, asking her, "What do you think of the whole picture?" He told her about his search for the perfect swimsuit and how he liked to go out on his boat, wearing either the swimsuit or nothing at all. He also told her how much he liked his velcro shorts because they "gave easy access to women who wanted him." Although he claimed that his shorts had fallen off accidentally and that they did so frequently, he made no attempt to put them back on until immediately before leaving the store. He returned a week later wearing the same shorts. When he saw that Faulk was not alone, he became flustered and left. From these facts, the trial court was entitled to conclude that the dominant purpose of appellant's conduct was "a shameful . . . interest in nudity, sexual conduct, [and] sexual excitement . . . [going] substantially beyond customary limits of candor . . . ."

We cannot conclude that the judgment is plainly wrong or without evidence to support it. The judgment of the trial court is affirmed.

*Affirmed.*

Koontz, J., concurred.

---

[1] In order to conform with the requirements of the First Amendment, the statute also requires that the conduct be without "serious literary, artistic, political or scientific value." Code § 18.2-372. Appellant concedes on appeal that his conduct had no such value.

Benton, J., dissenting.

Although Walter Geoffrey Hart's conduct was indecent, vulgar, and bizarre, the evidence did not prove either that his conduct was proscribed by Code § 18.2-387 or that his conduct was obscene.

Code § 18.2-387 states as follows:

Every person who intentionally makes an obscene display or exposure of his person, or the private parts thereof, in any public place, or in any place where others are present, or procures another to so expose himself, shall be guilty of a Class 1 misdemeanor.

The garment that Hart wore was described as a G-string or a bathing suit. The record contains no indication, however, that Hart's garment would have been inappropriate or unlawful if worn on a beach or at a place where sunbathing was appropriate. Hart does not dispute, however, that the garment was skimpy and did not cover his buttocks. The record establishes that the garment was inappropriately worn in a retail store and was offensive to the salesperson who watched Hart deliberately release his shorts to display this garment and his buttocks.

Although Hart's buttocks were fully exposed, his genitalia and anus were covered by the garment. His exposed buttocks are the only body part at issue in our determination whether the statute covers his conduct. I do not agree with the majority opinion's conclusion that buttocks are included within the scope of the term "private parts" contained in Code § 18.2-387. The majority reaches its conclusion by equating the statutory term "intimate parts" with "private parts" and by drawing inferences from the statutory definition of "nudity."

The statute that we are required to interpret and apply uses terms that are derived from the common law. The word "person," when used in connection with exposure of the body, has traditionally been considered in the common law to be a "euphemism for the penis." *Duvallon v. District of Columbia*, 515 A.2d 724, 726-28 (D.C. 1986). In addition, the term "private parts" has a generally accepted meaning, also derived from the common law, and refers to male or female genitalia. *State v. Jones*, 171 S.E.2d 468, 468-69 (N.C. App. 1970). Those common law terms are not gen-

erally understood to include an individual's buttocks. *See Duvallon*, 515 A.2d at 728. *See also State v. Crenshaw*, 597 P.2d 13, 14 (Haw. 1979) (female breasts are not private parts or genitalia).

Neither Code § 18.2-67.10(2), which defines "intimate parts" for purposes of criminal sexual assault, nor Code § 18.2-390(2), which defines "nudity" for purposes of restricting sale of certain items to juveniles, changes the accepted common law definitions of "person" or "private parts." Indeed, it is reasonable to conclude that the legislature defined the terms "intimate parts" and "nudity" so as to give a broader meaning than would have been the case if the statutes had used the terms, "person" or "private parts." Hart did not expose his genitalia; therefore, his conduct did not bring him within the statute.

Moreover, although the statute is styled "Indecent exposure," a conviction under Code § 18.2-387 may not be sustained unless the proof establishes that the "display or exposure" was "obscene." Mere nudity is an insufficient basis to declare conduct obscene. *Price v. Commonwealth*, 214 Va. 490, 493, 201 S.E.2d 798, 800, *cert. denied*, 419 U.S. 902 (1974). Indecency is different than obscenity. *FCC v. Pacifica Found.*, 438 U.S. 726, 739-41 (1978). Moreover, proof that conduct was indecent is insufficient to prove that it was obscene. *See Sable Communications of California, Inc. v. FCC*, 492 U.S. 115, 126 (1989). A salient distinction between indecency and obscenity is the element of prurience. *Pacifica Found.*, 438 U.S. at 740. *See also Miller v. California*, 413 U.S. 15, 24 (1973); *Roth v. United States*, 354 U.S. 476, 487 (1957). To establish that an act is obscene the proof must establish a "prurient interest in sex," Code § 18.2-372, and not just sexual desires. *Brockett v. Spokane Arcades, Inc.*, 472 U.S. 491, 498-99 (1985).

The majority, though conceding that Hart's words are not themselves obscene, concludes that his words provide the necessary indicia to establish that his conduct was obscene. "[S]ex and obscenity are not synonymous." *Roth*, 354 U.S. at 487. "Sexual expression which is indecent but not obscene is protected by the First Amendment." *Sable Communications*, 492 U.S. at 126. Hart's comments, as was his conduct, were vulgar and indecent, but his comments and his conduct did not rise to the level of an obscenity. Though his comments were certainly offensive to the

woman to whom he spoke, even in conjunction with his conduct, they did not satisfy the test of prurience.

In upholding this conviction, the majority equates indecency with obscenity. I dissent.